# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————
                                 :

MIA ROBINSON, a minor, by RACHEL    :
ROBINSON, guardian, and               :
RACHEL ROBINSON, individually,     :
                                 :

            Plaintiffs,      :       CIVIL ACTION
                                 :

            v.               :
                                 :       No. 11-5702

WOLTERS KLUWER HEALTH, INC.,    :
WOLTERS KLUWER UNITED STATES, INC.,  :
and PFIZER, INC.,                :
                                 :

            Defendants.     :
———————————————————————:

## <u>MEMORANDUM</u>

**ROBERT F. KELLY, SR. J.**                                  **DECEMBER  2, 2011**

Presently before the Court is a Motion to Remand submitted by Plaintiffs, Mia Robinson ("Minor Plaintiff"), a minor, through her guardian, Rachel Robinson, and Rachel Robinson ("Plaintiff"), individually.  Defendant, Pfizer, Inc. ("Pfizer") responds to Plaintiff's Motion to Remand.  For the reasons set forth below, this Motion is granted.

## I.     FACTS

Plaintiff alleges that Defendants Wolters Kluwer Health, Inc. ("WKH") and Wolters Kluwer United States Inc. ("WKUS") (collectively the "WK Defendants") author and supply literature to pharmacies that contain prescription drug information called patient education monographs ("PEMs"), which are intended to be given directly to consumers by their pharmacists.  (Compl. ¶ 44.)  Plaintiff further alleges that the WK Defendants "voluntarily and for profit" undertook to provide PEMs for the prescription drug Zoloft.  (Id. ¶ 45.)  Plaintiff

further alleges that she received a PEM with her prescription when she picked it up from her pharmacy.  (Id. ¶ 49.)  According to Plaintiff, she relied on the warnings and instructions contained in the PEM to determine the risks associated with the prescription.  (Id. ¶ 142.) Additionally, Plaintiff avers that the PEM inadequately warned her about the risk of congenital defects to developing fetuses.  (Id. ¶ 50.)  Plaintiff further avers that Minor Plaintiff was born with serious and permanent congenital defects because she took Zoloft while she was pregnant. (Id. ¶¶ 56-58.)

Plaintiff commenced this action by writ of summons in the Court of Common Pleas of Philadelphia County on July 11, 2011, and subsequently filed a Complaint on August 12, 2011. Regarding the claims against the WK Defendants, Plaintiff alleges: Negligence (Count Eight); Strict Products Liability-Defective Design (Count Nine); Strict Products Liability-Failure to Warn (Count Ten); Fraud, Misrepresentation, and Suppression (Count Eleven); and Breach of Express and Implied Warranties (Count 12).  Against all Defendants, Plaintiff alleges: Gross Negligence/Malice (Count 13); Loss of Consortium and Pecuniary Loss (Count 14); and Punitive Damages (Count 15).  Thereafter, Pfizer removed the action to this Court on September 12, 2011.  On October 3, 2011, the WK Defendants filed a Motion to Dismiss.[1]  On October 6, 2011, Plaintiffs filed a Motion to Remand, arguing that we lack subject matter jurisdiction, which is based upon diversity of citizenship, because the WK Defendants are citizens of Pennsylvania. Pfizer responds to the Motion to Remand, arguing that we may disregard the WK Defendants'

---

[1] We address this Motion prior to the Motion to Dismiss submitted by the WK Defendants (Doc. No. 8).  Finding that remand is warranted for the reasons argued by Plaintiff, we lack subject matter jurisdiction to consider the Motion to Dismiss, and we must remand the action to state court.  See Uon v. Tanabe Intern. Co., Ltd., Civil Action No. 10-5185, 2010 WL 4946681 (E.D. Pa. Dec. 3, 2010).

2

citizenship because they were fraudulently joined.

## II.    STANDARDS OF REVIEW

### A.    Motion to Remand

"By statute, a defendant has the right to remove a civil action from state court if the case

could have been brought originally in federal court." In re Briscoe, 448 F.3d 201, 215 (3d Cir.

2006) (citing 28 U.S.C. § 1441(a)).  For a removal predicated upon diversity of citizenship, a

proper exercise of federal jurisdiction requires satisfaction of the amount in controversy

requirement as well as complete diversity between the parties, that is, no plaintiff may be a

citizen of the same state as any defendant.  Id. at 216 (citing Grand Union Supermarkets of the

VI, Inc. v. H.E. Lockhart Mgmt., Inc., 316 F. 3d 408, 410 (3d Cir. 2003)).  Furthermore, removal

of an action premised upon diversity of citizenship is only permissible if "none of the parties in

interest properly joined and served as defendants is a citizen of the state in which such action is

brought."  28 U.S.C. § 1441(b).

### B.    Fraudulent Joinder

The doctrine of fraudulent joinder represents an exception to the removal requirements.

Briscoe, 448 F.3d at 215-16.  In a suit where one of the defendants is a citizen of the forum state,

the diverse defendant may still remove the action if it can establish that the non-diverse

defendants were "fraudulently" named or joined solely to defeat diversity jurisdiction.  Id. at 216.

"Joinder is fraudulent if 'there is no reasonable basis in fact or colorable ground supporting the

claim against the joined defendant, or no real intention in good faith to prosecute the action

against the defendant or seek a joint judgment.'"  Id. (quoting Abels v. State Farm Fire & Cas.

Co., 770 F.2d 26, 32 (3d Cir. 1985)).  "If there is even a possibility that the state court would find

that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand to state court." Id. at 217 (citing Batoff v. State Farm Ins. Co., 977 F.2d 848, 551-52 (3d Cir. 1992)).  "If the district court finds that the joinder was 'fraudulent' in this sense, the court can 'disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction.'" Id. (quoting Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999)).  If, however, the district court finds that it does not have subject matter jurisdiction over the removed action because the joinder was not fraudulent, it must remand to state court. Id. (citing 28 U.S.C. § 1447(c)).

The removing party carries a "heavy burden of persuasion" in showing that the nondiverse defendant was fraudulently joined.  Batoff, 977 F.2d at 851 (quoting Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1012 n.6 (3d Cir. 1987)).  "It is logical that the removing party bear this burden, for removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" Id. (quoting Steel Valley, 809 F.2d at 1010).  In evaluating the alleged fraud, the district court must "focus on the plaintiff's complaint at the time the petition for removal was filed. Id.  In so ruling, the district court must assume as true all factual allegations of the complaint. Id. at 851-52 (citing Steel Valley, 809 F.2d at 1010).  We must also "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Id. at 852 (quoting Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)).

The scope of inquiry for a motion to remand is different from that employed in deciding a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Id.

4

The inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is "more searching" than that permissible when a party makes a claim of fraudulent joinder.  Id. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted.  Id. Accordingly, we must exercise due care to ensure that our jurisdictional inquiry does not transgress into a motion to dismiss.  See Id.

In the course of determining whether the WK Defendants have been fraudulently joined, we must first decide whether to apply the substantive laws of Illinois or Pennsylvania.  This is due to the fact that Plaintiff alleges that all of the events giving rise to her claims occurred in Illinois and the case's only ascertainable connection to Pennsylvania is that the WK Defendants allegedly have principal places of business in Pennsylvania.

## III.  DISCUSSION

### A.    Fraudulent Joinder

Pfizer argues that the WK Defendants were fraudulently joined because Plaintiff has no colorable ground supporting her claims because no court has ever imposed a duty upon them under the circumstances of this case.  (Pfizer's Br. in Opp'n to Mot. to Remand at 5.)  It also contends that, under Pennsylvania's choice of law analysis, the applicable law is that of Illinois. (Id.)  Relying on Illinois law, Pfizer contends that: (1) there is no possibility that the WK Defendants could be liable under any theory of products liability because they are not manufacturers or sellers of Zoloft (Id. at 6); (2) there is no possibility that the WK Defendants could be found to have assumed a duty to warn of the potential dangers of Zoloft because the

"learned intermediary doctrine" shields them from liability (Id. at 9-13);[2] (3) the PEM provided

adequate warning about the dangers of taking Zoloft while pregnant (Id. at 13-15); and (4) the

First Amendment bars claims against the WK Defendants because the PEM constitutes protected

speech (Id. at 15-19.)

Plaintiff heartily contests each of Pfizer's arguments.  First, Plaintiff argues that remand

is necessary because every court to consider allegations of fraudulent joinder in connection with

a PEM defendant has ordered remand.  (Pltf.'s Br. in Support of Mot. to Remand at 10.)  Second,

she argues that we should apply Pennsylvania law because there is no conflict between

Pennsylvania's laws and those of Illinois since both permit recovery against a defendant who

voluntarily undertakes to warn patients about the dangers associated with prescription

medication.  (Id. at 12-14.)  Third, Plaintiff argues that, under Pennsylvania law, there is at least

the possibility that the WK Defendants owed a duty to her.  (Id. at 15.)  Fourth, Plaintiff argues

that neither Pfizer's alleged concealment of Zoloft's dangers nor the First Amendment shields it

from liability.  (Id. at 30.)  Finally, Plaintiff urges us to defer consideration of her motion until a

Pennsylvania Court of Common Pleas rules on outstanding Preliminary Objections addressing

---

[2] "Under the learned intermediary doctrine, as it is applied in Pennsylvania, a manufacturer will be held liable only where it fails to exercise reasonable care to inform the one for whose use the product is supplied of the facts which make the product likely to be dangerous." Rosci v. AcroMed, Inc., 669 A.2d 959, 969 (Pa. Super. Ct. 1995) (citation omitted). The intended user, in a case involving a prescription drug or device, is the prescribing physician. Id. Illinois courts are in accord. See Hernandez v. Schering, Corp., No. 1-09-3306, - - - N.E. 2d - - -, 2011 WL 4580587, at *5 (citing Kirk v. Michael Reese Hosp. & Med. Ctr., 513 N.E. 2d 387 (Ill. 1987) ("The learned intermediary doctrine provides that 'manufacturers of prescription drugs have a duty to warn prescribing physicians of the drugs' known dangerous propensities, and the physicians, in turn, using their medical judgment, have a duty to convey the warnings to their patients.'").

liability of defendants who manufacture and sell PEMs.[3]

Plaintiff alleges that the WK Defendants are Delaware corporations with their principal places of business in Pennsylvania.[4]  (Compl. ¶¶ 8-9.)  Plaintiff also alleges that she and the Minor Plaintiff were, "at all times relevant to the allegations in the Complaint . . . residents of the State of Illinois."  (Id. ¶ 3.)  Pfizer interprets this to mean that Plaintiff was prescribed Zoloft in Illinois, Plaintiff ingested the Zoloft in Illinois, the alleged injury occurred in Illinois, the center of the parties' relationship was Illinois, and Plaintiff received the PEM in Illinois.[5]  (Pfizer's Br. in Opp'n to Mot. to Remand at 5; Pfizer's Surreply Br. at 2.)  Plaintiff's Complaint does not identify the state in which she was prescribed Zoloft or ingested it, nor does she contest Pfizer's interpretation in her briefs.  Rather, Plaintiff argues that, under Pennsylvania choice of law analysis, Pennsylvania law prevails because there is no true conflict between the law of the two states since both states recognize that a defendant may voluntarily undertake a duty though no independent duty otherwise exists.

1.      Pennsylvania Choice-of-Law Analysis

A federal court deriving jurisdiction from diversity must apply the choice-of-law rules of the state in which it sits.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941);

---

[3] This we decline to do because we are able to resolve this Motion by referencing existing Pennsylvania law.

[4] Pfizer disputes Plaintiff's allegations relating to the WK Defendants' citizenship, claiming that the two corporations are unrelated entities and that WKUS is a New York corporation with its principal place of business in Illinois.  This dispute is not material to our analysis as Pfizer does not dispute that WKH has a principal place of business in Pennsylvania.

[5] We will consider the arguments raised by Pfizer in its Surreply pursuant to Local Rule of Civil Procedure 7.1(c).

Melville v. Am. Home Assurance Co., 584 F.2d 1306, 1308 (3d Cir. 1978).  Therefore,

Pennsylvania's choice-of-law rules control.  "However, '[b]efore a choice of law question arises,

there must first be a true conflict between the potentially applicable bodies of law.'"[6]  In re

Flonase Antitrust Litig., - - - F. Supp. 2d - - -, No. 08-cv-3301, 2011 WL 4464823, at *8 (E.D.

Pa. Sept. 26, 2011) (citing Huber v. Taylor, 469 F.3d 67, 74 (3d Cir. 2006)).  "'If a true conflict

exists, the court must then determine which state has the greater interest in the application of its

law.'" Id. (quoting Hammersmith v. TIG Ins. Co., 480 F.3d 220, 230 (3d Cir. 2007) (internal

citation omitted)).

        a.      Pennsylvania law applies because there is no true conflict

      Plaintiff argues that there is no actual, material conflict between the law of the forum

state, Pennsylvania, and the law of her home state, Illinois, and thus, Pennsylvania law is

applicable. (Pl.'s Br. in Support of Mot. to Remand at 12; Pfizer's Surreply Br. at 1.)  Pfizer

counters that neither state's laws permit recovery against it because "no court anywhere has held

that publishers of patient monographs have a duty to warn people taking prescription medicines

of risks associated with such medicines."  (Pfizer's Br. in Opp'n to Mot. to Remand at 7.)

---

[6] "Under Pennsylvania law, the court begins with an 'interest analysis' of the policies of all interested states and then-based on the result of that analysis-characterizes the case as a true conflict, false conflict, or unprovided-for case." Flickinger v. Toys R Us, Inc., No. 3:10-CV-305, 2011 WL 2160493, at *1 (W.D. Pa. May 31, 2011) (quoting LeJeune v. Bliss-Salem, Inc., 85 F.3d 1069, 1071 (3d Cir. 1996)).  A true conflict exists "when the governmental interests of [multiple] jurisdictions would be implicated if their law were not applied." Id. (citing Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 n.15 (3d Cir. 1991)).  A false conflict exists when "only one jurisdiction's law would be impaired by the application of the other jurisdiction's law." Id. at *2 (citing Lacey, 932 F.2d at 187).  Finally, an unprovided-for case arises when no jurisdiction's interests would be impaired if its laws were not applied. Id. Lex loci delecti (the law of the place of the wrong) continues to govern unprovided-for cases. Id. (citing Miller v. Gay, 470 A.2d 1353 (Pa. Super. Ct. 1983)).

Alternatively, Pfizer argues that if we find that the law of the two states conflict, Illinois has the greater interest in applying its laws.  (Pfizer's Sur-Reply Br. at 1-3.)  For the following reasons, we find that the laws of Illinois and Pennsylvania could possibly permit recovery, warranting application of Pennsylvania law.

First, we find that Illinois law does not preclude recovery against the WK Defendants because Plaintiff is not arguing that the WK Defendants had an independent duty to warn, but instead is arguing that they voluntarily undertook such a duty.  The cases cited by Pfizer do not support a contrary conclusion.  For instance, in Frye v. Medicare-Glaser Corp., 605 N.E.2d 557 (Ill. 1992), the plaintiff sued a physician, pharmacy, and pharmacist on a theory of negligent undertaking for failing to warn her son that the prescription should not be taken with alcohol. Id. at 558.  The plaintiff's son was found dead several days after he began taking the medication. Id.  The pharmacist who filled the prescription affixed a "drowsy eye" sticker to the prescription container, alerting the patient that the medication could cause drowsiness.  Id.  The pharmacist knew that the prescription was dangerous when taken with alcohol; nevertheless, she declined to affix an "alcohol warning" to the prescription.  Id. at 559.  The plaintiff claimed that, although the pharmacist and pharmacy did not have an independent duty to warn of the side effects of the prescription due to the learned intermediary doctrine, they voluntarily undertook to warn of the side effects, and did so negligently.  Id. at 559.  The Illinois Supreme Court agreed with the plaintiff and held that the pharmacy defendants could be liable for breaching a duty that it voluntarily undertook to warn of side effects, notwithstanding the learned intermediary doctrine, if it did so negligently.  Id. at 560.  In this case, Plaintiff alleges that the WK Defendants voluntarily undertook to warn about the dangers of Zoloft by issuing PEMs, which they intended

9

to directly reach patients.  (Compl. ¶¶ 44-55.)  Thus, we disagree with Pfizer that, under Illinois law, the WK Defendants could not be found to have assumed a duty to warn.  Such a conclusion is directly at odds with the Illinois Supreme Court's holding in <u>Frye</u>.

The <u>Frye</u> court also limited the scope of a voluntarily undertaken duty, holding that "[u]nder the voluntary undertaking theory of liability, the duty of care to be imposed upon a defendant is limited to the extent of its undertaking."  <u>Id.</u> (citing <u>Pippin v. Chicago Hous. Auth.</u>, 299 N.E.2d 596 (Ill. 1979)).  The court defined the scope of the pharmacy defendants' undertaking as warning that the prescription could cause drowsiness, which undertaking the court found the pharmacy defendants reasonably performed by affixing the "drowsy eye" sticker to the prescription container.  <u>Id.</u> at 560-61.  The court further held that voluntarily undertaking to warn of one side effect did not impose a duty upon the pharmacy defendants to warn of all possible side effects.  <u>Id.</u> at 561.  The <u>Frye</u> court stated that if it were to hold that a pharmacy or pharmacist assumed a duty to warn of all side effects by voluntarily undertaking to warn of one or some side effects, pharmacists would refrain from issuing warnings at all.  <u>Id.</u> at 557.

Furthermore, <u>Kasin v. Osco Drug, Inc.</u>, 728 N.E.2d 77 (Ill. App. Ct. 2000), another case relied on by Pfizer, merely stands for the proposition that a pharmacist's voluntarily assumed undertaking is limited to the extent of the undertaking.  <u>Id.</u> at 80-81.  In <u>Kasin</u>, the plaintiff sued his physician and the pharmacy that filled his prescription, alleging that the pharmacist breached a duty to warn him about the risk of kidney failure associated with the medication.  <u>Id.</u> at 77-78.  The pharmacist included some warnings but not those associated with kidney failure and instructed the patient to "[f]ollow doctor's instructions."  <u>Id.</u> at 78.  The court adopted <u>Frye</u>'s holding that "the learned intermediary doctrine does not apply once a pharmacist voluntarily

10

undertakes to warn a consumer of the drug's dangerous propensities" and that "the duty the pharmacist assumes is limited to the extent of the undertaking, which is correlative to the learned intermediary doctrine's premise that the patient is dependent on the physician's rather than the pharmacist's advice and warnings." Id. at 80.  Furthermore, referencing the Frye court's policy of encouraging pharmacists and pharmacies to continue to provide warnings to consumers, the Kasin court adopted that court's limitation on the scope of the duty.  Id. at 81.

We do not interpret Frye and Kasin as precluding the possibility that an Illinois court would find that Plaintiff has stated claims against the WK Defendants.  First, the policy considerations concerning hesitation on the part of pharmacists and pharmacies to continue providing warnings is not implicated in this case because the claims are not against pharmacy defendants.  Rather, the claims are against the WK Defendants, who are allegedly in the business of providing expansive, patient-directed compilations of warnings and instructions, which they promote as being "comprehensive" and "accurate."  (Pl.'s Reply Br. at 5.)  Furthermore, even assuming that an Illinois court would limit the WK Defendant's duty to providing accurate warnings of the side effects which they chose to warn, Plaintiff alleges that the WK Defendants undertook to warn about risks of taking Zoloft while pregnant, and that it did so negligently.  (Compl. ¶¶ 53-54.)  For present purposes, these allegations are sufficient to find that an Illinois court could find that Plaintiff has stated claims against the WK Defendants.

Pennsylvania law similarly provides that a duty may be conferred upon a defendant who voluntarily undertakes to perform a service.  A district court reciting Pennsylvania law has stated:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person . . . is subject to liability to the third

person for physical harm resulting from his failure to exercise
reasonable care to protect his undertaking, if (a) his failure to exercise
reasonable care increases the risk of such harm, or (b) he has
undertaken to perform a duty owed by the other to the third person,
or (c) the harm is suffered because of reliance of the other or the third
person upon the undertaking.

Klein v. Council of Chem. Ass'ns., 587 F. Supp. 213 (E.D. Pa. 1984) (quoting Patentas v. United

States, 687 F.2d 707, 716 (3d Cir. 1982)).  Like Illinois courts, Pennsylvania courts similarly

measure the scope of the duty by the scope of the defendant's undertaking.  Id. (citing Patentas,

687 F.2d at 716).

In Slater v. Hoffman-La Roche Inc., 771 F. Supp. 2d 524 (E.D. Pa. 2011), the court

confronted facts nearly identical to the present matter in the context of a motion to remand.  In

Slater, the plaintiff was prescribed Accutane to treat his acne.  Id. at 525.  The pharmacy that

filled the plaintiff's prescription provided him with PEMs prepared by WKH that contained

Accutane drug information and warnings.  Id.  After using Accutane for the period prescribed by

his physician, the plaintiff experienced several adverse health effects, culminating in a diagnosis

of colitis and ulcerative colitis.  Id. (citation omitted).  The plaintiff alleged that Accutane had a

propensity to cause inflammatory bowel disease ("IBD"), which manifested itself as either

Crohn's disease or ulcerative colitis.  Id.  The plaintiff further alleged that WKH failed to

provide, in the monographs that accompanied his Accutane, adequate, complete, or accurate

information or warnings regarding the risks of taking Accutane and side effects relating to IBD.

Id. at 526.

In Slater, the plaintiff was a citizen of Wisconsin, one defendant was a New Jersey

corporation with its principal place of business in New Jersey, another defendant was a Delaware

12

corporation with its principal place of business in New Jersey, and WKH was a Delaware corporation with its principal place of business in Pennsylvania. Id. at 526. Citing 28 U.S.C. § 1441(b), the plaintiff argued that removal was improper, considering WKH's Pennsylvania citizenship. Id. The removing defendant argued that WKH was fraudulently joined to defeat removal and that plaintiff had no cognizable claim against WKH because Pennsylvania's learned intermediary doctrine shielded it from liability. Id. at 527. The removing defendant further argued that Pennsylvania's learned intermediary doctrine held that non-physicians such as pharmacists and drug manufacturers do not have an independent duty to warn about the dangers and side-effects of prescription drugs. Id.

The court found the removing defendant's reliance on Pennsylvania's learned intermediary doctrine to be misplaced because the plaintiff's theory was premised upon WKH's voluntary assumption of a duty to exercise due care in issuing drug warnings by providing written drug information and warnings directed to patient end-users. Id. at 527-28. Moreover, the court held that the removing defendant had not met its burden of proving fraudulent joinder because such a finding is "usually reserved for situations where recovery from the forum or non-diverse defendant is a clear legal impossibility." Id. at 528 (citing West v. Marriott Hotel Servs., Inc., No. 10-4130, 2010 WL 4343540, at *3 (E.D. Pa. Nov. 2, 2010)). Because the removing defendant could not cite a Pennsylvania case "declining to impose a duty of care on monograph publishers or pharmacists when they voluntarily provide drug warnings to patients" and "at least one other state court" had imposed such a duty,[7] the court held that "a Pennsylvania state court

---

[7] The court cited a Massachusetts case, Cottam v. CVS Pharmacy, 764 N.E.2d 814 (Mass. 2002), holding that a pharmacy could be deemed to have voluntarily undertaken a duty to provide complete warnings and information if it provides a "more detailed" list of warnings to

could find WKH assumed a duty to plaintiff based on its voluntary provision of monographs

containing information and warnings about Accutane." Id.

Pfizer argues that Slater was wrongly decided because the court improperly "applied

Massachusetts law because the defendant had not pointed to any Pennsylvania case specifically

declining to impose a duty on 'publishers or pharmacists when they voluntarily provide drug

warnings to patients.'" (Pfizer's Br. in Opp'n to Mot. to Remand. at 12.)  We disagree with

Pfizer's contention.  A Pennsylvania state court is permitted to look to the law of other

jurisdictions as persuasive authority.  See Koken v. Reliance Ins. Co., 893 A.2d 70, 83 (Pa. 2006)

(citing Commonwealth v. Nat'l Bank & Trust Co. of Cent. PA, 364 A.2d 1331, 1335 (Pa. 1976))

("While it is a truism that decisions of sister states are not binding precedent on this Court, they

may be persuasive authority . . ..").  Pfizer also argues that Slater is inapplicable because that

decision did not involve a choice-of-law discussion.  (Pfizer's Br. in Opp'n to Mot. to Remand at

12 n.6.)  However, in arguing this position, it seems that Pfizer ignores Pennsylvania's choice-of-

law analysis, which requires us to determine the laws of the interested states and determine

whether they conflict.  Slater is relevant to understanding whether the plaintiff could assert a

"colorable claim" under Pennsylvania law, which is essential to our analysis.  We are in accord

with the Slater court's interpretation of Pennsylvania law and we similarly find that it is at least

possible that a Pennsylvania court could find that Plaintiff has stated a cause of action against the

WK Defendants.

Having reviewed the case law, we cannot conclude that the WK Defendants would not be

found to have assumed a duty to Plaintiff because, under Pennsylvania and Illinois law, such a

_____

consumers. Id. at 823.

14

result is not a "clear legal impossibility." As the law of both states currently exists, we find no true conflict. Moreover, the lack of Illinois and Pennsylvania precedent imposing a duty upon PEM publishers under the facts of this case is not conclusive evidence that the WK Defendants owed no duty to Plaintiff. For purposes of a motion to remand, we must "resolve any uncertainties as to the current state of controlling substantive law in favor of the plaintiff." Batoff, 977 F.2d at 852. Accordingly, we will apply the law of the forum state, in this case Pennsylvania. Since we have already determined that it is not a legal impossibility that a Pennsylvania court will find that the WK Defendants owed a duty to Plaintiff, we find that Plaintiff's joinder of the WK Defendant was not fraudulent. See Marriot Hotel Servs., Inc., 2010 WL 4343540, at *3.

 2. Pfizer's Additional Arguments in Support of a Finding of Fraudulent Joinder Are Improper on a Motion to Remand

 As an independent ground for finding that the WK Defendants were fraudulently joined, Pfizer argues that the WK Defendants are not liable under any set of facts because their PEMs constitute protected speech under the First Amendment. (Pfizer's Br. in Opp'n to Mot. to Remand at 15-19.) Pfizer also argues that Plaintiff's claims against the WK Defendants are not colorable because the PEM contained adequate warnings about the dangers of taking Zoloft while pregnant. (Id. at 13-15.) Plaintiff counters that whether the PEM constitutes protected speech is a contested factual issue, not properly determined on a motion to remand. (Pl.'s Reply at 6.) Plaintiff also argues that whether the warnings contained in the PEM were adequate is a contested factual issue not properly resolved on a motion to remand. (Id. at 2-3.)

 We agree with Plaintiff that a determination of the merits of a possible First Amendment

15

defense is improper and we reiterate that the "only question properly before the Court at this juncture is whether Plaintiff has a colorable claim in state court." Vogt v. Time Warner Entertainment Co., No. Civ. A. 01-905, 2001 WL 360058, at *2 (E.D. Pa. Apr. 3, 2001). Accordingly, though the WK Defendants may be able to assert a valid First Amendment defense to the claims made against them, we cannot, in examining Pfizer's fraudulent joinder allegation, make a determination on the merits of such defense in order to determine that the joinder of WK Defendants in this litigation is improper. See Id. (citing Lyall v. Airtrain Airlines, 109 F. Supp. 2d 365, 368 (E.D. Pa. 2000)). Furthermore, we agree with Plaintiff that resolution of a contested factual issue such as the adequacy of the warnings contained in the PEM are also not properly before the Court at this juncture because the adequacy of the warnings goes to the merits of the claims against it and not whether those claims are "colorable." Accordingly, we find that these additional arguments do not support a finding of fraudulent joinder and we will, therefore, remand this case to the Court of Common Pleas of Philadelphia County.

An appropriate Order follows.